## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**UNITED STATES OF AMERICA**

  **Plaintiff,**

**v.**           **Case No: 5:17-CV-93-Oc-TJC-PRL**

**JOYCE O. ISAGBA, et al.,**

  **Defendants.**

_____

## REPORT AND RECOMMENDATION[1]

This matter is before the Court on the United States' motion for default judgment against Defendants Joyce O. Isagba, Joyce O. Isagba as the trustee of Eneziakpezi Trust, David O. Isagba, and David O. Isagba as the trustee of Moeo Trust. (Doc. 18). Specifically, the United States seeks: (1) a judgment of over $700,000.00 against the Eneziakpezi Trust for unpaid federal income tax liabilities; and (2) an order foreclosing on federal tax liens against the real property and ordering the property be sold with the proceeds again going first toward the unpaid tax liability. For the reasons stated below, I submit that the motion should be granted and judgment should be entered in favor of the United States and against Defendants as requested.

## I.  BACKGROUND

### A.  The Federal Income Tax Liabilities

Joyce O. Isagaba, purporting to be the trustee of the Eneziakpezi Trust, filed a 2008 Form 1041, U.S. Income Tax Return for Estates and Trust, on behalf of the Eneziakpezi Trust. Compl.

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

¶ 9. On the Form 1041, Mrs. Isagba sought a refund of $459,023.00. Compl. ¶ 9. On August 20, 2009, the IRS made a manual refund of $462,557.62, consisting of the $459,023.00 requested, plus $3,534.62 of interest. Compl. ¶ 10. The $459,023.00 refund requested by Mrs. Isagba on the Eneziakpezi Trust's 2008 Form 1041 was based on claimed withholdings as reported on a Form 2439, Notice to Shareholder of Undistributed Long-Term Capital Gains. Decl. Bonnie Ragghinati ¶ 11, Exh. 3. The Form 2439 attached to the return is fraudulent: the entity that purportedly issued it – Citigroup-Group Investments – does not exist in the IRS database, and the Form 2439 does not provide an entity classification number. Decl. Bonnie Ragghinati ¶ 11, Exh. 3. Nor does a Google search for the entity in quotes yield any results. Decl. Bonnie Ragghinati ¶ 11. Additionally, on or about January 22, 2010, after the IRS had issued the refund check based on the first return, Mrs. Isagba filed an additional return on behalf of the Eneziakpezi Trust for the 2008 tax year. Decl. Bonnie Ragghinati ¶ 12, Exh. 4. That return sought a refund of $7,234,311 based on based on claimed withholdings as reported on a Form 2439. Decl. Bonnie Ragghinati ¶ 12, Exh. 4. The Form 2439 attached to the return is also fraudulent: the entity that purportedly issued it – Ghanuis-Group Investments – does not exist in the IRS database and the Form 2439 does not provide an entity classification number. Decl. Bonnie Ragghinati ¶ 12, Exh. 4. Again, a Google search for the entity in quotes also does not yield any results. Decl. Bonnie Ragghinati ¶ 12, Exh. 4.

On June 12, 2012, a delegate of the Secretary of the Treasury of the United States properly made assessments for tax year 2008 against the Eneziakpezi Trust. Compl. ¶ 12. The delegate assessed $459,023.00 for the tax that was erroneously refunded to the trust, and $56,944.49 in interest. Compl. ¶ 12; Decl. Bonnie Ragghinati ¶ 6, Exh. 1.

A delegate of the Secretary of the Treasury properly issued notices of the unpaid tax and interest and made demands for payment to the Eneziakpezi Trust. Compl. ¶ 13, Decl. Bonnie Ragghinati ¶ 7. Despite these notices and demands for payment, the Eneziakpezi Trust has not made any payments towards these assessments. Compl. ¶ 13. As of July 13, 2017, the Eneziakpezi Trust is indebted to the United States on account of those assessments in the amount of $722,936.30, plus interest and all statutory additions thereafter as provided by law. Decl. Bonnie Ragghinati ¶¶ 9, 10, Exh. 2.

### B.    The Subject Property

Mrs. Isagba used the funds from the Eneziakpezi Trust's erroneous refund to purchase real property located at 7712 Park Hill Avenue, Leesburg, Florida, 34748 ("Subject Property"). On September 1, 2009, less than two weeks after the IRS issued the refund check, Mrs. Isagba endorsed and deposited the $462,557.62 IRS refund check into SunTrust Bank Account number ********0753, titled Irrevocable Trust for Eneziakpezi Joyce O. Isagba, Trustee ("the Eneziakpezi Trust bank account"). Compl. ¶ 11a. Mrs. Isagba is the only person with signature authority for this account. Compl. ¶ 11a.

The next day, Mr. and Mrs. Isagba signed a purchase agreement with Maronda Homes of Florida to purchase the Subject Property. Compl. ¶ 11b. The Isagbas tendered a $1,000 money order to Maronda Homes of Florida. Compl. ¶ 11b. Approximately two weeks later, on September 14, 2009, Mr. Isagba created the Moeo Trust. Compl. ¶ 11c. The next day, he contacted Tonia Gibbs of Steel City Title, an affiliate of Maronda Homes, instructing her to place the title to the Subject Property in the name of the Moeo Trust. Compl. ¶ 11c. The day after Mr. Isagba instructed Tonia Gibbs to place the Subject Property's title in the Moeo Trust, Mrs. Isagba withdrew $257,500.00 from the Eneziakpezi Trust bank account. Compl. ¶ 11d. She used the funds to

purchase a SunTrust Official Check ("SunTrust check") in the same amount. Compl. ¶ 11d. The SunTrust check listed the purchaser as Mr. and Mrs. Isagba, was made payable to Steel City Title Inc., and was noted "for: Purchase Home." Compl. ¶ 11d. The closing on the Subject Property took place a week after the withdrawal from the Eneziakpezi Trust bank account. Compl. ¶ 11e. The Isagbas remitted a check from a Bank of America account in the amount $74.29 payable to Steel City Title Inc. Compl. ¶ 11e. A Special Warranty Deed dated September 23, 2009 was recorded in the Public Records of Lake County on September 29, 2009. Compl. ¶ 11e. The deed lists the Moeo Trust as the grantee of the property from Maronda Homes of Florida. Compl. ¶ 11e.

Mr. and Mrs. Isagba have lived in the Subject Property as a personal residence along with their children and Mrs. Isagba's mother since its purported transfer to the Moeo Trust. Compl. ¶ 18ii. Mrs. Isagba paid all of the real estate taxes for the Subject Property for tax years 2009, 2011, and 2012 using the Eneziakpezi Trust bank account. Compl. ¶ 20c. The 2009 check from the Eneziakpezi Trust bank account states that it is from "JOYCE O ISAGBA ITF ENEZIAKPEZI." Compl. ¶ 20c. In 2013, Mrs. Isagba also made half of the payments using the Eneziakpezi Trust's bank account. Compl. ¶ 20c.

### C. Federal Tax Liens

Pursuant to 26 U.S.C. §§ 6321 and 6322, a lien for the unpaid federal taxes described above arose on June 12, 2012, the date of assessment, in favor of the United States. Compl. ¶ 15. The lien attached to all property and rights to property belonging to and/or controlled by the Eneziakpezi Trust, including the Subject Property, which is titled in the name of the Moeo Trust. Compl. ¶ 15. On June 16, 2014, a delegate of the Secretary of the Treasury recorded a notice of federal tax lien in Lake County, Florida against the Eneziakpezi Trust on account of its 2008 federal income tax assessments. Compl. ¶ 16. On December 11, 2014, a delegate of the Secretary

of the Treasury recorded a nominee notice of federal tax lien in Lake County, Florida against the Moeo Trust, based on the Eneziakpezi Trust's 2008 federal income tax assessments. Compl. ¶ 17.

### D.      The Federal Action

On March 6, 2017, the United States filed its three-count complaint against Defendants. (Doc. 1). In Count I, the United States sought to reduce the tax liability of the Eneziakpezi Trust to judgment. In Count II, the United States asserted a right to the Subject Property under the common law of conversion. In Count III, the United States sought to foreclose the federal tax lien on the Subject Property. Despite being properly served, Defendants did not appear or otherwise defend this action, and thus, the Clerk entered default on July 10, 2017. (Doc. 15). Defendants then filed the instant motion for final default judgment. (Doc. 18).

## II.     DISCUSSION

### A.      Legal Standards

Rule 55 establishes a two-step process for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend the lawsuit, the clerk of court is authorized to enter a clerk's default against the defendant. Fed.R.Civ.P. 55(a). Second, after receiving the clerk's default, if the plaintiff's claim is not for a sum certain and the defendant is not an infant or an incompetent person, then the Court can enter a default judgment against the defendant for not appearing. Fed.R.Civ.P. 55(b)(2). A default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances the case never has been placed at issue." *Colaroll Shade and Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986).

All well-pleaded allegations of fact are deemed admitted upon entry of default, but before entering a default judgment, a court must ensure that it has jurisdiction over the claims and that

the complaint adequately states a claim for which relief may be granted. *See Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs., Ltd.,* 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) ("A default judgment cannot stand on a complaint that fails to state a claim.") (citations omitted). A sufficient basis must exist in the pleadings for the judgment entered. *See Nishimatsu*, 515 F.2d at 1206. A defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *See id*.

Rule 8 provides that a complaint must include (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for relief. Fed. R. Civ. P. 8(a). A complaint meets the requirements of Rule 8 if, in light of the nature of the action, the complaint provides factual allegations, which are assumed to be true, sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). Thus, in ruling on a motion for final default judgment, the Court must determine whether a sufficient factual basis exists in the complaint for a judgment to be entered. *See Nishimatsu*, 515 F.2d at 1206.

**B.     Claims**

Upon review of the Complaint, the Motion, and other relevant filings, I submit that default judgment should be entered. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §7402. (See Doc. 1 at 3.) Further, the Complaint adequately states a claim for which relief may be granted and the Complaint and supplemental filings substantiate

the judgment Plaintiff requests.[2]

### 1.     The Eneziakpezi Trust is liable for unpaid federal income taxes

The Complaint, as well as the Declaration of Revenue Officer Ragghianti, establish that a delegate of the Secretary of the Treasury made assessments against the Eneziakpezi Trust for unpaid federal tax liabilities for the tax year 2008, the Eneziakpezi Trust failed to pay despite notice and demand, and that it is indebted for those liabilities. IRS assessments are presumed to be correct. *See United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir. 1989). Because the Eneziakpezi Trust failed to appear or otherwise defend this action, it cannot overcome the presumptive validity of the IRS assessments. Revenue Officer Ragghianti's unrefuted declaration and accompanying exhibits bring the assessment balances up to date by showing the assessed tax, plus accruals of statutory penalties and interest based on the assessed amounts, as of July 13, 2017, totals $722,936.30. *See* Ragghianti Decl. ¶ 10, Ex. 2. Accordingly, judgment should be entered against the Eneziakpezi Trust for $722,936.30, plus accrued statutory interest from July 13, 2017 to the date of payment in full.

### 2.     The Federal Tax Liens should be foreclosed against the subject property

The United States is entitled to have its federal tax liens foreclosed. When the IRS assessed income tax liabilities against the Eneziakpezi Trust for the 2008 tax year, federal tax liens arose and attached to all property and rights to property belonging to and/or controlled by the Eneziakpezi Trust. *See* 26 U.S.C. §§ 6321-22 (A tax lien arises by operation of law upon the

---

[2] Finally, when a plaintiff seeks entry of default judgment against an individual defendant, the plaintiff must comply with Section 521 of the Servicemembers Civil Relief Act, which requires, *inter alia*, the filing of an affidavit by the plaintiff: (A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service. 50 U.S.C. app. § 521(b)(1). Here, the United States filed an affidavit stating that Joyce O. Isagba and David O. Isagba are not in military service, with supporting evidence.  (Docs. 18-6, 18-7, 18-8).

assessment of tax and attaches to all property and rights to property belonging to the taxpayer); *see also, United States v. National Bank of Commerce,* 472 U.S. 713, 719-20 (1985) (the language of Section 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that the taxpayer might have."). As a result of the unpaid income tax assessments against the Eneziakpezi Trust, federal tax liens attach to all of its property interests, wherever they are located.

However, federal tax liens are not self-executing. Thus, the IRS must take affirmative action to enforce collection of the unpaid taxes, including the filing of a lien-foreclosure suit, which the United States has done here. *National Bank of Commerce*, 472 U.S. at 720 (1985). Section 7403(a) authorizes the institution of a civil action in federal district court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax." Section 7403(b) provides: "All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." The suit is a plenary action in which the court "shall ... adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." § 7403(c).

Because none of the defaulted Defendants have appeared or answered in this case, it is appropriate for the Court to enter judgment that those federal tax liens attach to the Subject Property and to foreclose upon them. The Complaint and supplemental evidence establishes that Mrs. Isagba, as the trustee of the Eneziakpezi Trust, fraudulently transferred the property to the Moeo Trust to avoid tax liens she knew were imminent and that the Moeo Trust holds title to the Subject Property for the Eneziakpezi Trust—which is its true and equitable owner.

The allegations set forth in the Complaint show that the transfer of the Subject Property to the Moeo Trust was fraudulent under Florida law and should be set aside. Even though the Subject

Property was nominally purchased by the Moeo Trust from the property owner—since the Eneziakpezi Trust provided virtually all the funds for the purchase—the Eneziakpezi Trust in substance purchased the Subject Property and then transferred the title to the Moeo Trust. *See Frank v. Eeles*, 152 Fla 869, 872-873 (1943) ("Generally speaking, where the purchase money of land is paid by one person, and the title is taken in the name of another, the party taking the title is presumed to hold it in trust for him who pays the purchase price."). "[W]here a taxpayer disposes of property prior to the existence of federal tax liens, the United States may seek relief under the applicable fraudulent conveyance laws of the particular state in which the property and taxpayer are located." *Thompson v. Adams*, 685 F. Supp. 842, 845 (M.D. Fla. 1988) (citing *United States v. Ressler*, 433 F. Supp. 459, 463 (S.D. Fla. 1977) aff'd, 576 F.2d 650 (5th Cir. 1978)). "If a disposition of property is found to be a fraudulent conveyance, then the conveyance is vitiated, the taxpayer remains responsible for the tax liability, and the government may foreclose its liens to satisfy the taxpayer's indebtedness." *Id*.

Under Florida law, a transfer can be set aside as fraudulent where a transfer is made: "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Fla. Stat. Ann. § 726.105(1)(a). In determining whether a debtor had an actual intent to hinder, delay, or defraud a creditor, the Court may consider such factors as whether:

> (a) The transfer or obligation was to an insider.
> (b) The debtor retained possession or control of the property transferred after the transfer.
> (c) The transfer or obligation was disclosed or concealed.
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (e) The transfer was of substantially all the debtor's assets.
> (f) The debtor absconded.
> (g) The debtor removed or concealed assets.
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

      (j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

      (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fla. Stat. Ann. § 726.105(2).

      Many of these factors are present in the purported transfer from the Eneziakpezi Trust to the Moeo Trust. Mrs. Isagaba, as trustee of Eneziakpezi Trust and in her personal capacity, and Mr. Isagba, as the trustee of Moeo Trust and in his personal capacity, made the transfer with the actual intent to hinder, delay, and defraud the United States from collecting the Eneziakpezi Trust's tax liabilities. Their actual intent is demonstrated by the following uncontested facts. (1) After Mr. and Mrs. Isagba signed the purchase agreement for the Subject Property, they advised the seller to place the title in the name of the Moeo Trust, a newly-established trust which was controlled by Mr. Isagba–an insider; (2) Mr. and Mrs. Isagba retained possession of the Subject Property by living in it as a personal residence along with Mrs. Isagba's mother and their three children; (3) The transfer of the Subject Property to the Moeo Trust was of substantially all of the assets of the Eneziakpezi Trust–the Eneziakpezi Trust did not report any income from any other assets on either of the tax returns filed by Mrs. Isagba and there is nothing else on the tax returns to indicate that the Eneziakpezi Trust had any assets other than the funds from the IRS refund; (4) Mr. and Mrs. Isagba worked together to conceal the Subject Property from the United States by placing it in the name of the Moeo Trust and ensuring that the Eneziakpezi Trust never appeared in the chain of title; (5) The Eneziakpezi Trust did not receive consideration that was reasonably equivalent to the value of the Subject Property. In fact, it did not receive any consideration; (6) As the IRS refund check was the only asset owned by the Eneziakpezi Trust, the Eneziakpezi Trust became insolvent after the funds were taken out to purchase the Subject Property; and (7) Mrs. Isagba caused the Eneziakpezi Trust to incur a substantial debt by depositing the erroneous refund check while

knowing that the money did not belong to the Eneziakpezi Trust and the Subject Property was placed in the name of the Moeo Trust shortly thereafter. For all of the above reasons, the purported transfer of the Subject Property was made with actual fraudulent intent and should be set aside on that ground.

The transfer of the Subject Property to the Moeo Trust was also fraudulent under Florida Statutes § 726.105(1)(b) and should be set aside. A transfer is fraudulent "if the debtor made the transfer or incurred the obligation…without receiving reasonably equivalent value in exchange for the transfer…and the debtor believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay…" Fla. Stat. § 726.105(1)(b) (West). The uncontested facts set forth in the Complaint demonstrate that the Eneziakpezi Trust provided virtually all of the funds to purchase the Subject Property and received nothing in exchange for the transfer. Given the fraudulent nature of the refund request on the Form 1041, and the transfer of over half that erroneous refund into a bank check for the purchase of the Subject Property, Mrs. Isagba, as the trustee of the Eneziakpezi Trust, believed or reasonably should have believed that the Eneziakpezi Trust would incur debts to the IRS beyond the trust's ability to pay. Therefore, the purported transfer of the Subject Property was fraudulent pursuant to § 726.105(1)(b) and should be set aside.

In addition to the purported transfer being fraudulent under Florida law, the Moeo Trust holds title to the Subject Property as the Eneziakpezi Trust's nominee. A taxpayer's federal tax lien attaches to any interest they hold in property, including property held by a nominee. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–351 (1977). A nominee is one who holds bare legal title to property for the benefit of another. *United States v. Dornbrock*, No. 06-616669-CIV, 2008 WL 769065 *4 (S.D.Fla.2008). "[T]he [nominee] theory attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to

property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner." *Id.* Generally federal courts apply the law of the forum state; however, Florida does not have a bright-line test for determining nominee ownership. *United States v. Ippolito*, 838 F. Supp. 2d 1287, 1291 (M.D. Fla. 2012). Therefore, federal law should apply in determining nominee ownership in this case. *Grippo v. Perazzo*, 357 F.3d 1218, 1222 (11th Cir. 2004).

In determining whether the Moeo Trust holds title to the Subject Property as the mere nominee of the Eneziakpezi Trust, the Court should look to the following factors: (1) whether the taxpayer exercised dominion and control over the property; (2) whether the property of the taxpayer was placed in the name of the nominee in anticipation of collection activity; (3) whether the purported nominee paid any consideration for the property, or whether the consideration paid was inadequate; (4) whether a close relationship exists between the taxpayer and the nominee; and (5) whether the taxpayer pays the expenses (mortgage, property taxes, insurance) directly, or is the source of the funds for payments of the expenses. *Ippolito*, 838 F. Supp. 2d at 1291. The uncontested allegations in this case demonstrate that many, if not all, of these factors are present here. Mrs. Isagba, as the trustee of the Eneziakpezi Trust continues to exercise dominion and control over the Subject Property by residing in it and paying most of the real estate taxes associated with it from 2009-2013. Mrs. Isagba knew that the return she filed with the IRS was fraudulent–she claimed hundreds of thousands of dollars in withholdings from an entity that does not exist– and that any refund received based on that return did not rightfully belong to the Eneziakpezi Trust. Since she knew that the funds rightfully belonged to the IRS, she knew that the IRS would be entitled to attempt to collect them. To insulate the subject property from IRS collection, she worked with Mr. Isagba to place the Subject Property in the name of the Moeo Trust. It is uncontested that the Eneziakpezi Trust provided virtually all of the consideration to

purchase the Subject Property and received nothing in return from the Moeo Trust. Finally, Mrs. Isagba, the trustee of the Eneziakpezi trust and Mr. Isagba, the trustee of the Moeo Trust, have the close relationship of husband and wife. Therefore, I submit that the unrefuted allegations support a finding that the Moeo Trust holds title to the Subject Property merely as the Eneziakpezi Trust's nominee and the Court should enter judgment that the federal liens attached to it on that basis.

## III.    RECOMMENDATION

Accordingly, I submit that the United States' motion for default judgment (Doc. 18) should be **GRANTED** and the following findings should be made:

(1) Defendant Joyce O. Isagba, as the trustee of the Eneziakpezi Trust, is indebted to the United States for unpaid federal income tax liabilities for the tax year 2008 in the total amount of $722,936.30 as of July 13, 2017, plus fees and statutory additions thereon as provided by law from that date to the date of payment in full pursuant to 28 U.S.C. § 1961(c)(1) and 26 U.S.C. §§ 6621-22;

(2) federal tax liens arose against the Eneziakpezi Trust for unpaid federal income tax liabilities for the tax year 2008 and attached to the Subject Property;

(3) the United States is permitted to sell the Subject Property, free and clear of the defaulted Defendants' purported interests, at public auction pursuant to the decree of foreclosure and order of sale to be submitted to the Court by the United States within 30 days of entry of judgment; and the net proceeds of the sale shall be distributed first to the United States for the expenses of the sale and for application to the unpaid tax liabilities of the Eneziakpezi Trust.

Recommended in Ocala, Florida on October 31, 2017.


PHILIP R. LAMMENS
United States Magistrate Judge


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy